JAMES PYE vs. OLE A. BAKKE et al.

Argued May 31, 1893. Affirmed June 30, 1893.

**An Answer Construed.**

Upon an examination of the answer herein it is *held* that the allegations respecting an oral contract between the parties were irrelevant and redundant, and should have been stricken out on motion. *Held*, further, that, independently of these allegations, facts sufficient to constitute a defense by way of counterclaim for a breach of contract were contained in said answer.

**Certain Evidence Held Relevant.**

Certain assignments of error relative to the admission of testimony considered.

**Verdict Supported by Evidence.**

*Held*, further, that there was evidence tending to support the verdict.

Appeal by plaintiff, James Pye, from an order of the District Court of Grant County, *C. L. Brown*, J., made January 26, 1893, denying his motion for a new trial.

Plaintiff made an oral contract with defendants, Ole A. Bakke and John A. Bakke, to furnish materials and machinery and construct for them a flour mill at Elbow Lake, and complete the same by December 1, 1890, and they agreed to pay him therefor $8,000. This agreement was afterwards reduced to writing and signed by the parties. Plaintiff built the mill and received his pay, and afterwards brought this action to recover $225.50 that defendants owed him for some goods and extras that he furnished to them. They answered admitting the cause of action, but for counterclaim alleged the making of the mill contract and divers breaches thereof. They alleged that he did not complete the mill until December 24, 1890; did not build a sufficient platform in front of the mill; did not paint the mill building outside; did not spike and brace the mill building properly, nor lay tight floors; that the engine was only forty-four horse power and the boiler only forty horse power; that the mill was incapable of making more than thirty-five barrels of flour in twenty-four hours, and alleged other defects, and claimed $3,000 damages. The plaintiff replied, and the issues were tried May 26, 1892. The jury rendered a verdict for defendants, and as-

sessed their damages at $2,750.60. Plaintiff moved for a new trial, but was refused, and he appeals. The discussion here was mainly on the facts and the construction of the pleadings.

*Geo. F. Edwards,* for appellant.

*T. & M. Casey* and *J. W. Reynolds,* for respondents.

COLLINS, J. The causes of action arising on contract for the payment of money, set forth in the complaint herein, were admitted in defendants' answer, and by way of counterclaim it was alleged that in the month of June or July, 1890, the plaintiff and defendants entered into an oral contract, whereby, for a specified sum of money, the former undertook and agreed to erect and complete for the latter, as copartners, by the 1st day of December following, a flour mill at Elbow Lake, in this state. The details of this contract as to the materials to be used in the mill building and in an adjoining engine room, the dimensions of each, the power of the engine, the capacity of the boiler, and various other matters, which went to the character and capacity of the mill, were fully stated. It was also alleged that the mill was to be complete in every respect, and capable of making from fifty to seventy barrels of first-class flour each day of twenty-four hours. The answer then set forth that on August 12th plaintiff produced a written contract, and by means of false and fraudulent statements and representations that it was a full and complete memorandum of the said oral contract, prevailed upon and induced one of the defendants to sign it for both, and as the act of the firm, and as the contract for the erection and completion of the flour mill. A copy of this written contract was made a part of the answer. Then followed several allegations in reference to the failure of the plaintiff to build, equip, and complete the mill as agreed upon, and especially that he did not furnish an engine of forty-five horse power with a boiler of fifty horse power, as stipulated, but that the engine was of forty-four horse power only and the boiler of forty horse power only, and that the mill as constructed was not capable of making from fifty to seventy barrels of flour each day of twenty-four hours, but that its capacity did not exceed thirty-five barrels of flour in twenty-four hours. Defendants' damages were placed at $3,000 by reason of the alleged breach of contract, judgment being demanded for the excess over and

above the sum admitted to be due to plaintiff on the cause of action sued upon. The reply admitted that at the time and place mentioned plaintiff had built a mill for defendants, but alleged that it was so built under and by virtue of a written contract, and not otherwise. A copy of this contract was incorporated into the reply, and was the same written contract made a part of the answer. Full and complete performance of the same by the plaintiff, except as to certain changes by mutual consent, and an acceptance of the mill by defendants, was averred, and that the latter had paid various sums to plaintiff as agreed on; that $2,000 was paid in May, 1891, and that a balance of only $666.66, evidenced by a note and secured by a real estate mortgage, remained unpaid. The defendants had a verdict for $2,750.60, and plaintiff appeals from an order refusing a new trial.

The counsel for plaintiff makes twenty assignments of error, but these need not be discussed separately, for the principal questions are whether the trial court ruled correctly when it allowed the defendants to go into the alleged breach of contract, and whether there was evidence reasonably tending to support the verdict. The first of these questions is raised by several of the assignments, it being contended by plaintiff's counsel that the allegations of the answer were insufficient to constitute a counterclaim or defense. These allegations are not in the best form, and are somewhat indefinite. It is difficult to understand the purpose for which the averments in respect to the securing of the firm's signature to the written contract by means of false and fraudulent representations were introduced into the answer, for these averments were entirely insufficient, if upon the trial defendants intended to rely upon such a defense. But we think that, taking the whole answer, it is apparent that there was no substantial difference between the oral contract as stated therein and the written contract as set forth in the answer by the defendants, and reiterated by the plaintiff in his reply. The allegations of the answer clearly indicated that no reliance was to be placed upon the charge of fraud in respect to the written contract, and that it was the conditions of this contract which defendants complained had not been complied with by the plaintiff, to their damage. It is apparent that all averments in the

answer in respect to the oral contract were so irrelevant and redundant that they should have been stricken out on motion. In fact, almost at the outset of the trial, counsel for defendants announced to the court that they relied entirely on a breach of the written contract. But it is urged that it was not alleged in the answer that the mill was built under either the oral or written contract set out therein. But the making of the written contract was admitted by the reply, and this admission was coupled with the positive allegation that under this contract, and not otherwise, did the plaintiff build the mill in controversy. If there was a defect in the answer in this respect, it was cured by this averment in the reply.

The plaintiff's counsel contends that under the allegations of the answer no testimony should have been received concerning the capacity of the boiler. By the terms of the contract plaintiff was to furnish an automatic cut-off engine capable of developing forty-five horse power, with a boiler capable of developing steam for a fifty horse power. It may be, as argued, that there is a vast difference between agreeing to furnish a fifty horse power boiler and agreeing to furnish a boiler which will develop steam for fifty horse power; but to the ordinary mind the difference is not perfectly plain. The power or capacity of a boiler as well as of an engine is commonly referred to in the language found in the allegation. At any rate, the objection to the testimony relative to the capacity of the boiler was so general that the court below did not have its attention called to the distinction claimed in form of expression. One of plaintiff's witnesses as to the capacity of the mill had been in defendant's employ as a miller in the mill in controversy. He testified as to the number of barrels of flour made by him per day while making a test of its capacity. On the cross-examination he was asked whose wheat he was grinding at the time, and if it was not wheat belonging to one Derby. To these questions plaintiff's counsel objected, and he also protested against proof being made subsequently that the flour manufactured at that time was of an inferior quality. The witness had testified that in making the test he ground flour at the rate of sixty barrels a day, and of first-class quality. It was competent to show whose wheat he used on this occasion to lay

the foundation for showing the quality of the flour made and claimed by him to have been first class, and, of course, it was proper to contradict him as to the quality of the flour.

There is nothing in plaintiff's claim that defendants waived their right to recover damages. The court fully and fairly stated the law pertaining to the subject of waiver as applicable to the facts, and plaintiff has no cause for complaint on this feature of the case.

The charge as given by the court was based largely on requests prepared and presented by plaintiff's counsel. It was a clear and comprehensive statement of the principles which should govern the jury when determining the facts, and certainly was not unfavorable to plaintiff. It is not improbable that the weight of the evidence was also in his favor, but we do not concur in the assertion of counsel that the verdict, both as to general results and as to the amount of damages, was wholly unsupported by the proofs. On both of these points there was evidence sufficient to warrant the conclusion of the jury. The damages awarded seem to have been all that the evidence would justify, but we cannot say the amount was excessive.

Order affirmed.

VANDERBURGH, J., absent, did not sit.

Application for reargument denied July 12, 1893.

(Opinion published 55 N. W. Rep. 904.)